INLINE, J.
This is an appeal from a judgment of contempt of court for failure of a witness to appear at trial following receipt of a *11 subpoena compelling his attendance. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
Although the underlying factual basis for the instant lawsuit is not reflected by the record presented to this appellate court, as only portions of the record relevant to the alleged contempt were designated as the record on appeal, appellate briefs suggest that the plaintiffs were injured in an automobile accident and thereafter treated by Dr. Andrew S. Berens in the emergency room of St. Anne’s General Hospital in Lafourche Parish.
Prior to trial, a letter was sent to Dr. Berens by defense counsel, dated June 19, 2000, informing Dr. Berens that he would be subpoenaed to appear in the trial of the matter. Subsequently, on June 23, 2000, a subpoena was issued to Dr. Berens directing him to appear in court July 17-20, 2000, at 10:00 A.M. “and there remain until duly discharged to give your testimony on behalf of the [defendant].” Dr. Berens was personally served with this subpoena on July 11, 2000, after several failed attempts of service on July 5, 7, and 10, 2000.
Dr. Berens testified that he immediately contacted his employer’s attorney, Susan Martin, whose office was located in Dallas, Texas, and faxed the subpoena to her. Dr. Berens testified that Ms. Martin represented to him that the matter was to be continued. Further, despite representations to the contrary in defense counsel’s June letter, Dr. Berens was not contacted regarding his appearance at trial until plaintiffs attorney telephoned Dr. Berens on Monday night, July 17, 2000, apparently after trial had already commenced.
The following day, Tuesday, July 18, 2000, the trial judge issued a warrant for the arrest of Dr. Berens and, after hearing the statements of counsel, pronounced Dr. Berens in contempt of court for failure to appear in court as directed by the subpoena. Thereafter, the court heard the testimony of Dr. Berens in mitigation of his finding and then sentenced the doctor to serve ten days in the Lafourche Parish Jail. The sentence was suspended by the judge, initially, on the condition that, upon completion of his |3testimony, Dr. Berens serve as a painter for the sheriffs department for the remainder of the week. After a recess, the doctor was allowed to pay a $500.00 fine and tender apologies to both the jury and the trial attorneys in lieu of painting or serving a jail sentence.
A written judgment of contempt was signed by the court on October 20, 2000. Dr. Berens appeals this judgment, and makes the following assignments of error:
(1) The Trial Judge abused his discretion in finding that Dr. Andrew Berens willfully disobeyed a court ordered subpoena.
(2) The Trial Judge committed reversible error of law in failing to enter an order reciting the facts constituting contemptuous behavior on the part of the appellant.
(3) The trial judge denied the appellant due process under the Louisiana Constitution of 1974 and the United States Constitution, warranting reversal of the Judgment of direct contempt.
(4) The trial court committed reversible error of law in failing to adhere to judicial procedure with respect to physicians living more than ten miles from the seat of the court.
DISCUSSION
A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect *12 for its authority. Contempts of court are of two kinds, direct and constructive. La. C.C.P. art. 221. A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record. La. C.C.P. art. 222. A person who, without reasonable excuse, fails to obey a subpoena may be adjudged in contempt of the court which issued the subpoena. La. C.C.P. art. 1357.
After a thorough review of the record presented to this court on appeal, we find that Dr. Berens had a reasonable excuse for his failure to appear in court on July 18, 2000. The testimony revealed that Dr. Berens was in fact subpoenaed on July 11, 2000 to appear in court July 17-20, 2000. Dr. Berens had previously been informed by the attorney who had requested this subpoena via a letter, that he would be contacted regarding his appearance. That letter stated, in pertinent part, as follows:
In accordance with our customary practice. I will contact you approximately three days prior to trial and advise you of the status of the ease as well as the estimated day and time of your appearance. An exact 14hour will be confirmed approximately two to three hours before you will be called as a witness.
No call was received by Dr. Berens prior to trial, although his employer’s attorney, Susan Martin, apparently communicated with the defense counsel. Ms. Martin told Dr. Berens that she had been informed the trial was to be continued and he would be contacted if this continuance was not effected. A minute entry in the record reflects that defendants moved for a continuance of the trial, but it was denied by the trial court on July 14, 2000. There was no testimony at the contempt hearing that Dr. Berens was apprised of this fact.
The issue of Dr. Berens’ absence from the trial is first evidenced in the trial transcript for July 18, 2000, when the trial judge asks the attorneys: “Gentlemen, I understand you’re having trouble making Dr. Berens come to court?” The trial attorneys responded affirmatively to this question. The court then asked, “He has refused to come?” This question was not directly answered; however, plaintiffs attorney responded, “He claimed to have some scheduling problem.” The court asked the attorneys, “Do you move for a warrant for his arrest?” Without responding affirmatively, plaintiffs attorney stated, “We’d like him brought, Judge.” After having the bailiff call Dr. Berens’ name three times with no response, the trial judge then issued a warrant for Dr. Ber-ens’ arrest and ordered sheriffs deputies to “go get him now and bring him here.” The trial transcript filed into the appellate record, ended at this point.[2]
An additional proceeding, denominated “Contempt Hearing,” was transcribed and also appears in the record for July 18, 2000. In this proceeding, an additional attorney appeared before the court on behalf of Dr. Berens, although he stated that he had met Dr. Berens only “a few moments ago.” The proceeding was begun by the trial judge who asked trial counsel to relate to Dr. Berens’ attorney “the information you’ve given me relative to the doctor’s appearance.” Defense counsel then stated that his secretary had talked to “someone from Texas” who had called to “set up some type of arrangement for *13 [Dr. Berens’] appearance.” Defense counsel further stated that “we said that if we called him during our case it probably would not be until Wednesday or 1 ..¡Thursday and we were advised that he was going to be in Mississippi on Wednesday and Thursday. And furthermore, that he was going to be working until six o’clock today.” Plaintiffs counsel then stated:
Yesterday evening I personally spoke with Dr. [Berens].... Dr. Berens was on duty at the St. Anne Emergency Room, as I understood it, and was going to continuously be on duty til 6 p.m. this evening with no relief and then was going to Mississippi. He apprised me that no one had been in touch with him. That he had been contacted once through an attorney who works for the health care company that he is hired by, if I understand that correctly. And that he had received information from the defense counsel in this case that the case was being dropped or postponed, as I understood was told to him, and he had heard nothing from them for a couple of weeks, was my understanding.
The statements of counsel were the only “evidence” before the trial court to support a finding of contempt of court, appearing in the record of appeal. The trial attorneys did not testify that Dr. Berens was told when he would be needed to testify or that the doctor was instructed to appear at any definite time. Moreover, no one related to the court that Dr. Berens actually refused to come to court, merely that he was scheduled to work for the remainder of the week. Following the statements of counsel, the trial court made a finding of contempt of court. No actual testimony was taken prior to the court’s ruling.
Dr. Berens was allowed to testify “in mitigation” after the court’s ruling and prior to sentencing. Dr. Berens testified that he received the subpoena on Tuesday of the previous week and immediately contacted the attorney for his employer; his testimony on this point was as follows:
I faxed [Susan Martin] the subpoena on Tuesday, right after I got it, and she said, “I will contact the attorneys and tell them your schedule and see if it can be done as a deposition.” Then she called me back and said that the case was going to be postponed and that I shouldn’t worry about it. And that somebody would get back in touch with me if that was not the case.... I probably still have it on my answering machine, the message she left me saying that it was going to be postponed.
Dr. Berens also testified that he was contacted by the defense attorney’s office the morning of July 18, 2000, and was told by a secretary that “it would be very unlikely that they would need me today or tomorrow, probably Thursday. And she asked what my [schedule] was and I said, ‘I’m covering the emergency room in Mississippi on Wednesday and Thursday and Friday.’ And she said, ‘Well, I will relay that message to the Court and somebody will get back to you if they still need you.’” Dr. Berens stated that the next thing that happened was that a deputy “showed up and arrested me.” 1 fiWhen the court directly asked Dr. Berens whether plaintiffs attorney had instructed him to be present in court, during their telephone conversation the previous evening, Dr. Berens stated:
No. He said that he would relay that I was on duty til 6 p.m. and that he would see what he could do. But he didn’t indicate that I had to be here. I don’t believe he indicated I didn’t have to be here.
The court then asked plaintiffs attorney if he had instructed Dr. Berens to come to court, and he replied:
*14 I told him I was going to report it to the Court. We wanted him to come, but he had a problem that I didn’t know about it and I was going to tell the Court about it.
There was simply an absence of evidence to show that the doctor was given a specific day and time to appear in court by the attorneys involved in the case, although he had been assured that this would be done. It can be inferred from the trial judge’s statements that he concluded the doctor should have been present on the first day of trial as indicated on the subpoena, without regard to the representations of the trial attorneys to the contrary. Respectfully, we do not agree.
The only case cited to this court on appeal involving a judgment of contempt against a physician who failed to appear after receiving a subpoena to do so was Dabezies v. Bourg, 273 So.2d 622 (La.App. 1st Cir.), writ denied, 277 So.2d 445 (La.1973). However, we find the facts of that case to be distinguishable from the instant case. In Dabezies, the doctor was summoned to appear on each day of trial. The record reflected that the doctor was never advised that it would be unnecessary to respond to the summons. In fact, the opinion of the appellate court stated that the doctor had received telephone instructions from the trial judge to appear. Under those circumstances, the finding of contempt was upheld.
In contrast with the facts of Dabezies, Dr. Berens was instructed by defense counsel that he would be notified three days prior to trial of the approximate day and time his appearance would be needed. The record does not reflect that this was done. Dr. Berens was further assured that an exact hour for his appearance would be determined and confirmed approximately two to three hours prior to the time he would be called as a witness. The record does not reflect that this was done. Under these particular facts and circumstances, Dr. Berens had a reasonable excuse for failing to |7appear until notified. Consequently, the record does not support the trial court’s finding that the doctor was in contempt of court.[3]
CONCLUSION
For the reasons assigned, the judgment of the trial court finding Dr. Andrew S. Berens in contempt of court is hereby reversed.
REVERSED.

. Although the fact is not reflected in the record, Dr. Berens states in brief to this court that after being served with the warrant, he was placed in jail for approximately two hours while the court was at recess for lunch.

. Having decided the matter on this issue, we pretermit appellant's other assignments of error. Likewise, we find it unnecessary to entertain appellant’s motion to strike the briefs of appellees.